SEEGMUELLER V. PAHNER.

1. KEEPING BARKING DOGS AS NEGLIGENCE.

While a barking dog may be a nuisance, it is not negligence to keep such a dog.

2. LIABILITY FOR INJURIES CAUSED BY DOG'S FRIGHTENING CHILD.

Where there is no testimony in support of allegations that the defendant harbored a large St. Bernard dog, which he permitted to run without restraint and without a muzzle, or the taking of any means to protect the public from injury which might result from the vicious disposition of said dog, a verdict awarding damages on account of injuries to a child, who ran in fright from the dog and fell from a second story porch, must be set aside where it appears that the dog was on the premises of the defendant owner, and did not bite the child, or touch him, or do anything except bark.

[For other cases in point, see 1 Cyc. Dig., "Animals," §§ 112-135.—Ed.]

[Syllabus approved by the court.]

ERROR to Hamilton common pleas court.

**Renner & Renner** and **Eugene Heim,** for plaintiff in error.

**Moulinier, Bettman & Hunt,** for defendant in error.

**SWING, J.**

This was an action in the common pleas court for damages by August Pahner, Jr., by his next friend, August Pahner, Sr., against Ludwig Seegmueller. It is alleged in the petition that Seegmueller was the owner of a large St. Bernard dog; that he negligently harbored said dog on his premises and permitted it to run at large without restraint and without a muzzle, and without taking any means to protect the public from injury which might result from the vicious disposition of said dog; and that said dog was known by him to be of a bad temper and of unruly, vicious and dangerous habits.

That on May 27, 1904, he, Pahner, Jr., was playing on the porch on the second story of defendant's premises, when said dog came from the yard of said premises and ran at this plaintiff and his companions, growling and barking in a menacing and terrifying manner, and that he

became very much frightened, and in endeavoring to reach the roof of a shed nearby climbed over the railing of the porch in order to escape from the dog which was already upon him, but that in his confusion and fear, owing to the near presence and vicious aspect of the dog, he slipped and fell to the ground, a distance of some twelve or fifteen feet, and was seriously injured. He claimed damages in the sum of $5,000. The jury awarded $1,000 damages and judgment was entered for the amount of its verdict. Numerous errors are assigned for a reversal of the judgment.

On the trial two witnesses were called by plaintiff, who testified to what occurred at the time of the injury; although four boys were playing together at the time, two of the boys were not produced as witnesses. The two who did testify were the plaintiff, who at the time of the accident was nine years old, and at the time of the trial was eleven, and his brother, who was two years younger.

The plaintiff's testimony was to the effect that He and the other boys opened the door on the defendant's premises, and went in the yard to get a drink of water; that shortly after the dog of the defendant came in another door from the street nearby; that he ran up the stairs and the dog ran after him and barked; that he tried to climb over the fence (railing on porch) when the dog jumped on him and bit him on the arm. He was trying to get in the water-closet, a building near the porch and lower, and on which the evidence shows these boys had been jumping from the porch. The evidence clearly shows by all the witnesses that the boy fell off the porch, and had his arm broken and skull fractured by the fall.

Arthur, his younger brother, testified that they went in the defendant's yard to get a drink, and that the dog came in and they all ran up the steps to get out of the dog's reach so he would not bite them. He and another were first and the plaintiff was last; that the plaintiff was going to jump on the roof (of the water closet) and was holding onto the rail, and the dog came up and bit him on the arm, and he fell down. On cross-examination Arthur said that they played "catchers" there; that they would run up the steps onto the porch and jump from the porch onto the roof of the water-closet, onto the ground. He said the dog at the time was on the third floor of Seegmueller's house at the end of the hall, and that at the time Gustie (plaintiff) got hurt and that Freddie Wunderlicht (who was one of the boys playing there) was to "tag Gustie," when he fell and got hurt. If what Arthur testified to on cross-examination is true it must be admitted plaintiff had no case; but it was said in argument by plaintiff's counsel that Arthur would

Seegmueller v. Pahner.

have said anything that defendant's counsel might have asked him to say; it cannot be said that this is correct from a perusal of the record; of course, it is in contradiction to what he said in chief, but what he said in cross-examination does not seem unreasonable, and if he was so easily led to say that which was untrue, little, if any, credence can be attached to his evidence in chief. If Arthur's evidence is disregarded the only evidence left is that of the plaintiff. He said the dog bit him, but this is not alleged in the petition, and the dog "ran at him barking and in a menacing and terrifying manner;" and the evidence clearly shows that the dog did not bite him. Dr. Meyers, who was called to see the boy at the time of the accident, said he found no marks on him of having been bitten by a dog. It is evident, if plaintiff told the truth, that when the dog came in the yard where the boys were, the dog had no intention at that time to bite or assault the boys, for he could have turned on them in a moment; they could never have gone up the stairs and all of them climb over the porch railing and jump off, except the plaintiff, before the dog could reach them; he could travel twice as fast as they could. All dogs bark, and it is not negligence for a person to keep a dog that barks, and we know of no cases where one has recovered for injury caused by a dog barking. It might be a nuisance to keep a barking dog, but hardly a ground for an injury for keeping a vicious dog.

As against the plaintiff's evidence the defendant introduced four witnesses who testified that they saw the accident; two of them, Flora Schnell and Hilda Brossard, testified that they saw the boy fall, saw him hanging on the porch and that he fell right at their feet. They said the dog was not there; was not biting the boy. They heard the dog bark, but it sounded as though he was some distance away. Clara Strible testified to the same effect. Ben Radefield also testified that he saw the boy fall and the dog was not there. These witnesses seem to be disinterested. There is no conflict in their testimony, and it seems reasonable when taken in connection with the admitted facts. And still further, it seems unreasonable that these boys should run upstairs and jump off a porch twelve feet high in order to get away from a dog which was approaching them when it was much easier for them to go out of the door through which they had just entered; and while children of their age should not be held to exercise the judgment of persons of mature age, yet in this case even a child it would seem could hardly act in this way.

The judgment we think is manifestly against the evidence.

**Giffen** and **Smith, JJ.,** concur.